## A94A2674. HABERSHAM METAL PRODUCTS COMPANY v. HUNTSVILLE FASTENER & SUPPLY, INC.

(455 SE2d 356)

RUFFIN, Judge.

Habersham Metal Products Company ("Habersham") filed this breach of contract action against Huntsville Fastener & Supply, Inc. ("Huntsville"). Huntsville filed a motion to dismiss for lack of personal jurisdiction, and Habersham appeals from the trial court's grant of that motion.

"[A] defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving lack of jurisdiction. [Cits.]" *Scovill Fasteners v. Sure-Snap Corp.*, 207 Ga. App. 539 (428 SE2d 435) (1993). "If the motion is decided on the basis of written submissions alone, as was the motion in this case, disputes of fact found in the affidavits are resolved in favor of plaintiff. [Cit.] Further, if a motion is decided on the basis of the written submissions, the reviewing court is in an equal position with the trial court to determine the facts and therefore examines the facts under a non-deferential standard. [Cits.]" Id. at 540.

Viewed in this light, the record shows that Huntsville is an Alabama corporation in the business of distributing screws and other fastening devices. Huntsville's principal place of business is in Huntsville, Alabama, and it has no offices or employees in Georgia, nor is it registered to do business in Georgia. In 1987, Habersham, whose business is located in Habersham County, Georgia, telephoned Huntsville in Alabama to investigate whether it could fill an order for a certain type of screws. Huntsville filled the order and the parties continued doing business with each other to the extent that Huntsville was filling several Habersham orders each month.

During their general course of business, Habersham would telephone Huntsville in Alabama to place an order, and while Huntsville would give a verbal commitment to fill the order by phone, it required Habersham to confirm the order in writing. Habersham then sent a written purchase order to Huntsville in Alabama and Huntsville in turn shipped an invoice containing the terms of the agreement and the order itself to Habersham's place of business in Georgia. One provision of the agreement states that "[t]his agreement shall be construed in accordance with the laws of the State of Alabama, U.S.A." During the course of dealings, both parties initiated telephone calls and mail correspondence necessary to the ongoing business relationship, which included Huntsville mailing Habersham catalogues and sample products.

In 1989, Habersham placed an order with Huntsville and after a dispute arose concerning the order, two representatives of Huntsville met with representatives of Habersham at Habersham's office in

Georgia. While both parties agree that the parties met to resolve the dispute, Habersham also asserts that they discussed future business relations. Although the dispute was not resolved and Habersham eventually filed suit, Habersham placed 58 purchase orders with Huntsville after the meeting.

"OCGA § 9-10-91 (1) provides that courts of this state may exercise personal jurisdiction over any nonresident if that nonresident '(t)ransacts any business within this state.' 'This has been interpreted to mean that purposeful acts must have been performed by the defendant to tie it to the State, and mere telephone or mail contact with an out-of-state defendant, or even the defendant's visits to this state, is insufficient to establish the purposeful activity with Georgia required by the Long Arm statute. The United States Supreme Court has held that an individual's contract with an out-of-state party *alone* cannot automatically establish sufficient minimum contacts in the other party's home forum, and that the contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors — prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing — that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.' [Cit.]" *Apparel Resources Intl. v. Amersig Southeast*, 215 Ga. App. 483, 485 (1) (451 SE2d 113) (1994).

In the instant case, Huntsville's active participation in the ongoing business relationship with Habersham provided sufficient minimum contacts with Georgia for the trial court to exercise its long arm jurisdiction under OCGA § 9-10-91. While Huntsville did not initiate the business relationship, it continuously corresponded with Habersham and sent its products to Habersham in Georgia. Moreover, while a majority of this correspondence was necessary to the transaction of business, Huntsville also sent catalogues and sample products to Habersham that helped perpetuate the business relationship. Considering the extent and nature of this activity over the course of the business relationship, Huntsville's contacts within Georgia were not "random, fortuitous, or attenuated. . . ." (Citation and punctuation omitted.) *Behar v. Aero Med Intl.*, 185 Ga. App. 845, 850 (2) (366 SE2d 223) (1988). While "[i]t is critical to this due process analysis that the nonresident defendant's ' " 'conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there[,]' " ' [cit.]" id., "the mere statement that [Alabama] law would apply implied that suit would be brought [in Georgia] but that [Georgia] law would not apply." *Mayacamas Corp. v. Gulfstream Aerospace Corp.*, 190 Ga. App. 892, 895 (1) (380 SE2d 303) (1989).

"Given [Huntsville's] consistent and purposeful . . . dealings

with the Georgia corporation, dealings which bestowed substantial benefits to [Huntsville] . . . , 'neither reasonableness nor fair play nor substantial justice would be offended' by haling [Huntsville] into a Georgia court and exercising jurisdiction over [it]. [Cits.]" *White House v. Winkler*, 202 Ga. App. 603, 605 (415 SE2d 185) (1992). The trial court erred in granting Huntsville's motion to dismiss for lack of personal jurisdiction.

*Judgment reversed and case remanded. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MARCH 14, 1995.

*James N. Butterworth,* for appellant.
*M. Steven Campbell,* for appellee.