A07A1995. HOME DEPOT SUPPLY, INC. v. HUNTER MANAGEMENT, LLC.
(656 SE2d 898)

MIKELL, Judge.

The Home Depot Supply, Inc. f/k/a Maintenance Warehouse America Corporation ("Home Depot"), appeals the trial court's ruling dismissing Home Depot's action against Hunter Management, LLC ("Hunter LLC"), an Illinois limited liability company, for the unpaid balance on an open account, attorney fees, and interest. The trial court ruled that Hunter LLC was not subject to personal jurisdiction in Georgia under the "transacting business" section of Georgia's long-arm statute, OCGA § 9-10-91 (1). Home Depot contends that the trial court erred in failing to resolve disputes of fact in Home Depot's favor and, therefore, in concluding that it lacked personal jurisdiction over Hunter LLC. We agree and reverse.

In Georgia, a defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving lack of jurisdiction.[1] Where, as here, the motion was decided on the basis of written submissions alone, "any disputes of fact in the written submissions supporting and opposing the motion to dismiss are resolved in favor of the party asserting the existence of personal jurisdiction,"[2] and the appellate standard of review is nondeferential.[3]

Viewing the facts in the light most favorable to the exercise of personal jurisdiction,[4] the record shows that Home Depot is a Texas corporation which sells supplies and equipment to commercial businesses, including apartment complexes. From August 2003 through October 2005, Home Depot supplied and delivered approximately $205,000 worth of goods on an open account (the "Credit Account") to an apartment complex known as "Emerald Forest Apartments" (the "Apartments"), located in Mableton. Home Depot contends that Hunter LLC applied for and established the Credit Account in its own name. Accordingly, when Home Depot set up the Credit Account, it listed Hunter LLC on its records as the customer and showed the Apartments as the delivery or shipping location. When Home Depot

---

[1] *ETS Payphone v. TK Indus.*, 236 Ga. App. 713 (513 SE2d 257) (1999).

[2] (Citations omitted.) *HTL Sp. Z O.O. v. Nissho Corp.*, 245 Ga. App. 625, 626 (538 SE2d 525) (2000); accord *Aero Toy Store v. Grieves*, 279 Ga. App. 515, 524 (2) (631 SE2d 734) (2006).

[3] *Yukon Partners v. Lodge Keeper Group*, 258 Ga. App. 1, 2 (572 SE2d 647) (2002).

[4] *Stuart v. Peykan, Inc.*, 261 Ga. App. 46, 47 (581 SE2d 609) (2003).

was unable to collect amounts charged to the Credit Account for goods ordered and delivered to the Apartments from September through November 2005, Home Depot sued Hunter LLC for the unpaid balance. Hunter LLC conceded that it completed, executed, and submitted the application for the Credit Account (the "Application") to Home Depot in August 2003, but asserted that it was acting on behalf of another entity, Gem Emerald Apartments, LLC ("Gem LLC").

In support of its motion to dismiss, Hunter LLC submitted the affidavit of Eric Rothner, the Managing Member of both Hunter LLC and Gem LLC, a Georgia limited liability company. Rothner averred that Hunter LLC had never owned, operated, or managed the Apartments and that the actual owner and property manager of the Apartments was instead Gem LLC. Hunter LLC contended that it had not opened or maintained the Credit Account with Home Depot on its own account, but instead had been acting for Gem LLC, the actual owner. Rothner averred that Hunter LLC provided "office management and bookkeeping services" to Gem LLC, these services being performed in Illinois; and that Gem LLC made payments on the Credit Account from December 2003 to October 2005 by checks drawn on its Illinois bank account and forwarded to Home Depot's California office. Rothner further averred that Hunter LLC had its business offices in Evanston, Illinois; was not organized or registered under Georgia law; did not maintain any agents, representatives, officers or employees in Georgia; was not licensed to transact business in Georgia; neither owned nor rented property in Georgia; maintained neither an office nor a bank account in Georgia; did not regularly conduct business in Georgia; and did not derive substantial revenue from goods sold or services provided in Georgia.

In response, Home Depot submitted the affidavit of its Director of Credit Services, Tim Thompson, who attested that throughout the period from August 2003 through October 2005, Home Depot sent invoices on the Credit Account to Hunter LLC at its offices in Illinois; that Home Depot's records reflected numerous and sustained contacts throughout this period between Home Depot and Hunter LLC concerning the Credit Account; that throughout this period Hunter LLC employees communicated with Home Depot regarding the Credit Account; and that Hunter LLC employees approved or denied payment for goods ordered on the Credit Account and supplied by Home Depot to the Apartments in Georgia. Thompson further averred that Hunter LLC never gave any indication to Home Depot that the invoices on the Credit Account were being directed to the wrong entity or to the wrong address. Home Depot also submitted the affidavit of Sandy Crooks, a Georgia resident employed by Gem LLC as property manager for the Apartments, who averred that the goods ordered

from Home Depot and charged to the Credit Account were delivered to the Apartments; that Hunter LLC's accountant, David Segall, "was involved in the processing of payments of invoices from vendors that supplied goods" to the Apartments; and that Crooks had numerous telephone conversations with Segall "in attempts to get vendor invoices paid," including the Home Depot invoices at issue in this case.

Nowhere on the Application completed by Hunter LLC was Gem LLC mentioned by its correct name. The Application listed the "Property" as "Gem Emerald DBA Emerald Forest Apts.," with a location in Mableton. "Hunter Management LLC/Gem Properties" was listed as the business name of the owner, and the box for "Owner" (rather than that for "Fee Management Co.") was checked. Hunter LLC's address in Evanston, Illinois, was listed as the owner's address, and an Atlanta bank and a Doraville floor company were listed as references. The Application was completed and signed by David M. Aronin (an employee of Hunter) as "CFO" of the "Property Owner." Significantly, the Application, executed on August 18, 2003, represented that the "Owner" (shown as "Hunter Management LLC/Gem Properties") had been in business for five years. Hunter LLC was formed in 1994; Gem LLC was created on March 13, 2003.

"OCGA § 9-10-91 (1) provides that courts of this state may exercise personal jurisdiction over any nonresident if that nonresident transacts any business within this state."[5] "The Georgia long-arm statute confers personal jurisdiction over nonresidents to the maximum extent permitted by due process."[6] "Due process requires that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign."[7]

> The constitutional touchstone is whether the defendant purposefully established minimum contacts in the forum State, that is, whether the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. Prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing, must be evaluated in determining whether the defendant has purposefully established minimum contacts within the forum.[8]

---

[5] (Punctuation omitted.) *Habersham Metal Products Co. v. Huntsville Fastener & Supply*, 216 Ga. App. 646, 647 (455 SE2d 356) (1995).

[6] (Citation omitted.) *HTL*, supra; accord *Yukon Partners*, supra at 4.

[7] (Citation and punctuation omitted.) *Yukon Partners*, supra.

[8] (Punctuation and footnote omitted.) *Genesis Research Institute v. Roxbury Press*, 247 Ga. App. 744, 745 (542 SE2d 637) (2001).

The "minimum contacts" required to confer personal jurisdiction over a nonresident may not be merely "random," "fortuitous," or "attenuated."[9] Instead, in order for a Georgia court to exercise jurisdiction over a nonresident based on "transacting business," it is necessary that "purposeful acts must have been performed by the defendant to tie it to the State."[10] Thus, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[11] Further, even where a nonresident defendant has no physical presence in Georgia, intangible contacts, such as telephone communications, can be sufficient to establish "minimum contacts" which meet the constitutional standard for the exercise of personal jurisdiction.[12]

Even though it did not itself own or manage the Apartments, Hunter LLC represented itself as owner in the Application. Construing the evidence in favor of the exercise of personal jurisdiction, Hunter LLC induced Home Depot to supply approximately $205,000 worth of goods to a Georgia apartment complex and to provide credit to the benefit of a Georgia limited liability company, Gem LLC, under common control with Hunter LLC. Thus, the facts of this case are analogous to those of *Robertson v. CRI, Inc.*[13] There, this Court determined that personal jurisdiction extended to Robertson, a nonresident guarantor of a loan from a Georgia branch of Wachovia to a corporation with offices in Georgia, of which the guarantor was a shareholder,[14] because "Robertson could be characterized as having availed himself of the resources of a Georgia financial institution, and the loan could be characterized as substantial, thus showing . . . purposeful activity in Georgia."[15] Similarly, here Hunter LLC availed itself of the credit extended by Home Depot, the supplier of goods to the Apartments in Georgia.

---

[9] (Citations and punctuation omitted.) *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 475 (II) (A) (105 SC 2174, 85 LE2d 528) (1985).

[10] (Citation and punctuation omitted.) *Habersham*, supra. See also *Aero Toy Store*, supra at 517 (1).

[11] (Citation, punctuation and footnote omitted.) *Stuart*, supra at 49 (1).

[12] See *First Nat. Bank of Ames, Iowa v. Innovative Clinical & Consulting Svcs.*, 280 Ga. App. 337, 338 (634 SE2d 88) (2006).

[13] 267 Ga. App. 757 (601 SE2d 163) (2004).

[14] Id. at 757-758.

[15] Id. at 760. See also *Drennen v. First Home Sav. Bank*, 204 Ga. App. 714, 715-716 (420 SE2d 376) (1992) (nonresident guarantors executed guarantees to induce bank to extend credit to their corporation for construction of motel in Georgia). Compare *Stuart*, supra (fact that nonresident's guaranty of purchase money note was "gratuitous," that is, guarantor did not receive any ownership interest in restaurant purchased, indicated that guarantor had not "purposefully" availed himself of the law of Georgia).

Based on the evidence that Hunter LLC initiated its relationship with Home Depot and that the goods were delivered in Georgia to a commonly-controlled apartment complex in Georgia, and that payment was handled by Hunter LLC, and considering the long course of dealing between Home Depot and Hunter LLC, the exercise of personal jurisdiction over Hunter LLC by the Georgia court is reasonable.[16]

*Judgment reversed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JANUARY 24, 2008.

*Isenberg & Hewitt, Harriet C. Isenberg, Ryan L. Isenberg*, for appellant.

*Shaw, Gussis, Fishman, Glantz, Wolfson & Towbin, S. Jarret Raab*, for appellee.

---

[16] See *Robertson*, supra at 763.